NELSON and others, Respondents, v. FISHER WELL DRILL-
ING COMPANY, Appellant.

*No. 336. Submitted under sec. (Rule) 251.54 May 8, 1974.—
Decided June 17, 1974.*
(Also reported in 218 N. W. 2d 489.)

The cause was submitted for the appellant on the brief of *Randall E. Morey* and *Whelan, Morey, Morey & Ricci, S. C.,* all of Mondovi, and for the respondents on the brief of *Donald G. Olson Law Office, S. C.,* and *Robert H. Rasmussen,* all of Phillips.

HALLOWS, C. J. Defendant-appellant Fisher Well Drilling Company (Fisher) contracted with Ogema Sanitary District No. 1 to construct and install sanitary sewers within the town of Ogema on its accepted bid of approximately $140,000. The work, which commenced in the fall of 1968 and ran through March of 1971, involved the laying of approximately 3.8 miles of concrete pipe and a total of 17,906 man hours. On February 21, 1968, the wage scale for the project was set by the department of industry, labor & human relations pursuant to sec. 103.49, Stats., as called for by sec. 66.293, delineating the rate of pay covering the various job classifications and was incorporated in the contract. The specifications of the contract provided that the type of work done and not a previously assigned occupational title would determine the wage rate payable. The wage rate scale established 14 "trade" classifications, with prescribed minimum hourly wage rates varying between $3.50 per hour for "general laborer" to $4.67 for "bricklayer or stonemason." In addition, two truck-driver job classifications and 19 equipment-operator job classifications were established.

On April 20, 1971, plaintiff-respondent Conrad Nelson (Nelson) commenced an action against Fisher for the

recovery of unpaid wages pursuant to sec. 66.293 (3) (a), Stats.[1]  On September 10, 1971, plaintiffs-respondents Marvin Garrow, George Frankki, James Cummings, Elmer Olson, William Bierman, Robert Larson and Donald Pearson filed written consent that suit be brought on their behalf by Nelson against Fisher to pursue their claims for unpaid wages. Adverse examinations were had and records produced and then on January 31, 1972, a summons and complaint were served on Fisher which defined the claims made. The plaintiffs sought unpaid wages due and owing from Fisher on account of work performed by the various plaintiffs on the Ogema job for which they had not been compensated at the wage rates prescribed by the department of ILHR wage scale. Nelson and consenting plaintiffs contend they had been paid $3.50 per hour, the general labor rate, for all labor performed on the job when they should have been paid at higher wage rates for some of the labor performed on the job.

Nelson claimed to have performed the work of a pipelayer, bricklayer and stonemason, carpenter, mortar mixer, air-tool operator, sewer caulker, bottomman, cement finisher, dump and regular truck driver, large air-com-

---

[1] "66.293 **Contractor's failure to comply with municipal wage scale.** . . . (3) . . .

"(a) Any contractor, subcontractor or agent thereof, who fails to pay the prevailing rate of wages determined by the department of industry, labor and human relations under this section, shall be liable to the employes affected in the amount of their unpaid minimum wages or their unpaid overtime compensation and an additional equal amount as liquidated damages. Action to recover the liability may be maintained in any court of competent jurisdiction by any one or more employes for and in behalf of himself and other employes similarly situated. No employe shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and the consent is filed in the court in which the action is brought. The court shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee and costs to be paid by the defendant."

pressor operator, oiler and greaser operator, under three-inch pump discharge operator, well-point pump operator and tractor bulldozer end-loader operator in addition to general laborer for which he sought $1,200 unpaid wages, representing the total of the difference between the general laborer wage rate paid and the wage rate payable for the job classifications allegedly satisfied; and an additional $1,200 liquidated damages as allowed under sec. 66.293 (3) (a), Stats. The others interposed similar claims, detailed in respect to jobs allegedly performed and the amounts allegedly owing from Fisher: George Frankki—$475, unpaid wages; Elmer Olson—$750, unpaid wages; Robert Larson—$700, unpaid wages; Marvin Garrow—$600, unpaid wages; James Cummings —$1,000, unpaid wages; William Bierman—$500, unpaid wages; and Donald Pearson—$1,000, unpaid wages. Each plaintiff, as had Nelson, also sought liquidated damages as allowed by sec. 66.293 (3) (a) in a sum equivalent to their respective unpaid wages claim, bringing the total amount claimed to $12,450 plus costs and disbursements. Thus each plaintiff claimed to have engaged in work fitting at least three different job classifications other than that of common laborer and four of the seven plaintiffs claimed to have worked at jobs fitting at least 10 different job classifications other than that of common laborer.

By its answer, Fisher alleged it had paid plaintiffs in conformity with the ILHR wage-rate scale for the project; alleged plaintiffs had served exclusively as general laborers and not in any other job classifications; and denied any unpaid wages or liquidated damages were due and owing plaintiffs. Fisher later amended its answer to interpose the defense of the statute of limitation, namely, sec. 893.21 (5), Stats., to bar all claims of plaintiffs relating to work allegedly performed prior to April 20, 1969.

Nelson testified his hours of work were to be allocated in the following manner:

| | | |
|---|---|---|
| Dump truck driver | — | 156 hours; |
| Operate water pumps | — | 500 hours; |
| Pipelayer | — | 555 hours; |
| Air-tool operator | — | 320 hours; |
| Air-compressor operator | — | 16 hours; |
| Carpenter | — | 38 hours; |
| Sewer caulker | — | 29 hours; |
| Mortar mixer | — | 10 hours. |

Marvin Garrow worked from October, 1968, to the end of August, 1969, and testified that his hours were to be allocated as follows:

| | | |
|---|---|---|
| Pipelayer | — | 723 hours; |
| General laborer | — | 68 hours; |
| Cement finisher | — | 4 hours; |
| Mortar mixer | — | 19 hours. |

Robert Larson testified that his hours were to be allocated to the following:

| | | |
|---|---|---|
| Air-tool operator | — | 368½ hours; |
| Laying pipe | — | 206½ hours; |
| Operate water pump | — | 159 hours; |
| Mortar mixer | — | 50 hours; |
| Install well points | — | 42 hours; |
| Trucking | — | 23½ hours; |
| Mason tender | — | 21 hours; |
| General labor | — | 11½ hours. |

Elmer Olson testified that he worked in the following categories:

| | | |
|---|---|---|
| Well-point operator | — | 220 hours; |
| Bracer | — | 42 hours; |
| Air-tool operator | — | 437 hours; |

| Cement finisher | — | 35 hours; |
| Pipelayer | — | 172 hours. |

George Frankki worked for Fisher from mid-October, 1968, to October, 1969, and testified that he worked the following hours:

| Topman | — | 100 hours; |
| Pipelayer | — | 875¼ hours; |
| Trucker | — | 100 hours; |
| Laborer | — | 91¾ hours. |

William Bierman claimed the following hours in the categories listed:

| Air-tool operator | — | 221½ hours; |
| Pipelayer | — | 110½ hours; |
| Dump truck | — | 119 hours; |
| Small pump operator | — | 120 hours; |
| Bricklayer | — | 57 hours. |

James Cummings worked for Fisher from mid-October, 1968, until November, 1970, and claimed hours in the following categories:

| Pipelayer | — | 1,242.5 hours; |
| Water pump operator | — | 482.5 hours; |
| Cement work | — | 101.5 hours; |
| Air-tool operator | — | 175.5 hours; |
| Mortar mixer | — | 15 hours; |
| Front end loader | — | 16 hours; |
| Bracer | — | 57.5 hours; |
| Air-compressor operator | — | 15 hours; |
| Sewer caulker | — | 54 hours. |

The special verdict submitted to the jury contained seven questions, each with a number of sub-parts, inquiring as to each of the seven plaintiffs. The jury was asked to find the number of hours of work performed sub-

sequent to April 20, 1969, by each of the plaintiffs in each of the categories or job classifications other than "general laborer" in which the plaintiffs had claimed to have labored. The questions made no reference to "general laborer." The jury found each plaintiff had worked in only one classification: Conrad Nelson (pipelayer)—875 hours; Marvin Garrow (pipelayer)—190 hours; Robert Larson (operating water pumps)—495 hours; Elmer Olson (pipelayer)—500 hours; George Frankki (pipelayer)—480 hours; William Bierman (air-tool operator) —470 hours; and James Cummings (pipelayer)—1,115 hours.

Fisher moved *inter alia* to change the answers to all questions in the verdict to read "none" and to grant judgment in its favor on the verdict as changed on the ground there was insufficient evidence for the jury to have found that any of the plaintiffs had worked any number of hours in any job classification or for a new trial on the ground *inter alia* the verdict was perverse. The plaintiffs also moved to change answers in the verdict to conform to the proof. The trial court reduced the jury determinations of hours worked of five of the seven plaintiffs and left the jury determinations stand in the case of the remaining two plaintiffs. Judgment was entered on the amended verdict in favor of the plaintiffs in the total amount of $3,641.54 plus $229.97 in costs and disbursements.[2]

---

[2] Sec. 66.293 (3), Stats., provides every "municipality" (defined in sub. (3) (b) to include metropolitan sewerage districts organized under secs. 66.20 to 66.26), before soliciting bids for the contract for any project of public works other than highway, street or bridge construction projects, the estimated project cost of completion of which exceeds $2,500 where a single trade is involved and $25,000 where more than one trade is involved, shall apply to the department of industry, labor and human relations to ascertain "the prevailing wage rate in all trades and occupations required in the work contemplated," which determination shall be made pursuant to sec. 103.49, filed with the municipality, referred to in

By its verdict, the jury found that each of the seven plaintiffs had worked in one job category other than "general laborer" while on the Ogema job. In the cases of five of the seven plaintiffs, the jury finding as to the

the published notice soliciting bids on the project and ultimately incorporated in and made a part of the contract. It is therein also prescribed that "[a]ll employees working on the project shall be paid by the contractor in accordance with the wage rate incorporated in the contract." Sub. (3) (a) of sec. 66.293 states the liability of employers who fail to pay the prevailing rate of wages determined by ILHR. It is there prescribed that noncomplying employers "shall be liable to the employes affected in the amount of their unpaid minimum wages or their unpaid overtime compensation and an additional equal amount as liquidated damages." Sec. 103.49, pursuant to which the ILHR wage-rate scale must be prepared, provides that "[t]he prevailing wage rate in any trade or occupation in any area shall be the hourly basic rate paid plus the hourly contribution for health and welfare benefits, vacation benefits, pension benefits and any other economic benefit, whether paid directly or indirectly, to a majority of all persons employed in such trade or occupation in such area . . . ."

4 Wisconsin Administrative Code, chapter IND 90, entitled "Municipal Contracts for Construction of Public Works," defines the term "trade or occupation" in the following manner:

"TRADE OR OCCUPATION· means one of the job classifications that identifies the specific work regularly done by laborers, workmen and mechanics in the erection, construction, remodeling or repairing of any building or any other works project, on a contract basis on projects that are similar to the contract work in the area. The duties, kinds of work, and other component elements envisioned by the commission for job classifications of trades and occupations are those which prevail and are historically recognized in the construction industry for work in projects of a character similar to the contract work." IND 90.01 (4).

This chapter also defines "wages." It is said very generally that "[w]ages paid for work done in any given trade or occupation shall be computed at a wage rate not less than the prevailing wage rate listed in the certification." This rather general directive is followed immediately by the more specific mandate that "The type of work done, and not a previously assigned occupational title, shall determine the required minimum prevailing wage rate payable." Wis. Adm. Code, sec. IND 90.03.

hours expended in that job category grossly exceeded even the claims made by the individual plaintiffs for that particular category at trial. Conrad Nelson testified that he worked 555 hours as a pipelayer and the jury found he had worked 875 hours. Robert Larson testified that he worked 159 hours as a water-pump operator and the jury found he had worked 495 hours. Elmer Olson testified that he worked 172 hours as a pipelayer and the jury found he had worked 500 hours. William Bierman testified that he worked 221½ hours as an air-tool operator and the jury found he had worked 470 hours. Finally, James Cummings testified he had worked 969 hours as a pipelayer after the April 20, 1969, statute of limitation cut-off date and the jury found he had worked 1,115 hours. In three of the five cases where the jury finding exceeded even the top figure claimed by the plaintiff, the jury finding was considerably more than double the claimed figure. The grossly excessive character of the jury verdict was readily apparent to the trial court. It was error for the trial court to change answers in the verdict and then grant judgment on the verdict instead of ordering a new trial because of perversity of the jury's verdict. Before the trial court can change answers in a verdict, it must make a finding of no perversity. The trial court failed to do this and could not have so found.

*Redepenning v. Dore* (1972), 56 Wis. 2d 129, 201 N. W. 2d 580, is the most recent expression of this court's position on perversity of a verdict. The court stated the principles involved in the resolution of such question to be as follows (pp. 133, 134) :

"In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 91, 92, 102 N. W. 2d 393, we said, '. . . where an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of the plaintiff's

damages, or of having a new trial on the issue of damages.
. . .' It follows that in those instances where the verdict
is the result of perversity or prejudice or is the result of
prejudicial error, the court does not fix the reasonable
amount of the damages but orders a new trial for the
defendant. . . .

"A verdict is perverse when the jury clearly refuses to
follow the direction or instruction of the trial court upon
a point of law, or where the verdict reflects highly emo-
tional, inflammatory or immaterial considerations, or an
obvious prejudgment with no attempt to be fair.

"The trial judge, who is in a better position to deter-
mine whether perversity permeated the verdict, con-
cluded it did not. This conclusion will not be upset unless
it can be shown to be an abuse of discretion.

"Other than the contentions that the amounts awarded
by the jury are excessive or not supported by evidence,
the defendants make no claims upon which to base a con-
clusion of perversity. Excessiveness alone, except perhaps
in a case where it is grossly so and readily apparent, is not
sufficient to label a verdict perverse. Likewise minor
awards not supported by any evidence do not necessarily
indicate perversity."

See also: Meke v. Nicol (1973), 56 Wis. 2d 654, 663, 203
N. W. 2d 129; Breunig v. American Family Ins. Co.
(1970), 45 Wis. 2d 536, 545, 546, 173 N. W. 2d 619;
Brown v. Montgomery Ward & Co. (1936), 221 Wis. 628,
267 N. W. 292; Grammoll v. Last (1935), 218 Wis. 621,
261 N. W. 719; and 5 Callaghan's Wisconsin Pleading
and Practice, pp. 103–108, secs. 34.61 to 34.66.

A perverse verdict is one which is clearly contrary to
the evidence. A verdict of this nature cannot stand but
must be set aside and a new trial granted. Grammoll v.
Last (1935), 218 Wis. 621, 632, 261 N. W. 719 (citing
cases). To denominate a verdict perverse, it is not
required that the jury be found to have acted dishonestly
or from improper motives but it must nevertheless appear
that considerations which were ulterior to a reasonably
fair application of the judgment of the jury to the evi-

dence under the instructions of the court have controlled the jury. A verdict may be so grossly inadequate or excessive as pertains to the amount allowed as damages to be termed perverse particularly where the evidence is susceptible to an exact computation of damages. *Grammoll v. Last, supra; Murphy v. Lachmund Lumber & Coal Co.* (1927), 194 Wis. 119, 215 N. W. 822. *See also:* 5 Callaghan's *Wisconsin Pleading and Practice,* p. 104, sec. 34.62 (citing cases). In the instant case, the grossly disproportionate character of the jury verdict was manifest. Furthermore, this is not a case involving merely "minor awards" which are unsupported by the evidence. The trial court here should have ordered a new trial.

*By the Court.*—Judgment reversed and cause remanded, with direction to grant a new trial.