Carl DOSTAL and Michael C. Dostal, a minor, by Leon S. Schmidt, Jr., his Guardian ad Litem, Plaintiffs-Respondents and Cross-Appellants,

Jane DOSTAL, Plaintiff-Respondent,

v.

MILLERS NATIONAL INSURANCE COMPANY, an Illinois corporation, and Hubert Monroe, Defendants and Third-Party Plaintiffs-Appellants and Cross-Respondents,

H. MONROE, INC., a Wisconsin corporation, Defendant and Third-Party Plaintiff-Appellant,

HERITAGE MUTUAL INSURANCE COMPANY, a domestic insurance corporation, Third-Party Defendant-Defendant on Cross-Claim and Cross-Appellant.†

Court of Appeals

*No. 85–1548. Submitted on briefs November 12, 1986.—Decided February 12, 1987.*

(Also reported in 404 N.W.2d 90.)

† Petition to review denied.

244

For the defendants and third-party plaintiffs-appellants the cause was submitted on the briefs of *Carroll E. Metzner, Barrett J. Corneille* and *Jan A. Smokowicz* and *Bell, Metzner & Gierhart, S.C.,* of Madison.

For the respondent and cross-appellant Michael Dostal the cause was submitted on the briefs of *Kevin F. Milliken* and *Stephen P. Hurley* and *Aagaard, Hurley, Burish & Milliken, S.C.* of Madison.

For the respondents and cross-appellants Heritage Mutual Insurance Company and Carl Dostal the cause was submitted on the brief of *Francis J. Podvin*

and *Richard D. Weymouth* and *Nash, Podvin, Detlef-sen, Tuchscherer & Weymouth, S.C.* of Wisconsin Rapids.

Before Dykman, J., Eich and Sundby, JJ.

EICH, J. The appeal and cross-appeal in this twice-tried dogbite case present several issues relating to the award of treble damages under sec. 174.04, Stats. (1979–80), and the propriety of various rulings by the trial court.

Michael Dostal, a minor, was bitten by a dog owned by Hubert Monroe. Michael and his parents, Carl and Jane Dostal, sued Monroe[1] and his insurer, Millers National Insurance Company, for damages. Monroe counterclaimed against Carl Dostal and his insurer, Heritage Mutual Insurance Company, for contribution, alleging that Dostal was contributorily negligent in caring for and supervising Michael on the day in question. The case went to trial and Monroe was found causally negligent in the manner in which he kept and controlled the dog. Carl Dostal was also found negligent with respect to the incident, and the jury apportioned sixty percent of the total negligence to Monroe and forty percent to Carl Dostal. The jury found that Monroe was on notice that the dog had previously injured another child, thus triggering the treble damage provisions of sec. 174.04, Stats. (1979–80). In addition to medical expenses, which were stipulated by the parties, the jury awarded Michael

---

[1]Because the incident occurred on property owned by Monroe's farm implement business, H. Monroe, Inc., the corporation was joined as a defendant in the action. Unless otherwise indicated, "Monroe" is used in the opinion to describe both the corporation and the individual.

$6,800 for past, and $8,500 for future, pain and suffering.

In motions after verdict, the trial court concluded that the jury's damage award for Michael's past and future pain and suffering was perverse and ordered a new trial on those issues. At the second trial, the jury awarded Michael a total of $20,000 for past and future pain and suffering and an additional $5,150 for future medical expenses. After verdict, the trial court struck the award for future medical expenses and trebled the $20,000 award for pain and suffering, granting Monroe contribution from Carl Dostal and Heritage for $8,000.

Monroe and Millers appeal, arguing that: (1) treble damages are not recoverable under sec. 174.04, Stats. (1979–80), in the absence of the owner's knowledge that the dog had previously "mischievously harmed" someone; (2) treble damages may not be awarded on the portion of Michael's damages not attributable to the owner of the dog; (3) the damage verdict at the first trial was not perverse, and the court erred in ordering the new trial on damages; (4) even though the trial court ultimately overturned the award for future medical expense after the second trial, the mere fact that the issue was before the jury improperly influenced the verdict on Michael's pain and suffering; and (5) Michael's counsel's invocation of the "golden rule" argument in his closing remarks to the jury entitles Monroe to a new trial. The issue on the Dostals' cross-appeal is whether the trial court abused its discretion in striking the award of future medical expenses from the second verdict.

We conclude that the trial court incorrectly computed the enhanced damages and reverse on that issue. In all other respects, we affirm the judgment.

The basic facts are not in dispute. Michael Dostal accompanied his father, Carl, to Monroe's place of business where Carl sought to purchase a tractor part. Monroe and Dostal went to inspect the tractor from which the needed part was to be taken, leaving Michael with the dog. Several minutes later, they heard Michael scream and turned to see him standing next to the dog, bleeding from bites to his face. There was considerable evidence as to the nature and severity of Michael's injuries and his need for future medical treatment, and Monroe conceded that the dog had bitten another young boy on an earlier occasion.

## I. TREBLE DAMAGES

(a) *The Need to Prove the Owner's Knowledge of the Dog's Prior "Mischievous" Acts*

At the time of Michael's injury, the applicable treble damage statute was sec. 174.04, Stats. (1979–80), which provided: "Any person suffering personal injury by any dog ... may give notice to the owner or keeper of the act done, and if after such notice such dog shall injure any person ... the owner or keeper shall be liable to pay to the person injured thereby treble damages."

Monroe argues that treble damages are, to a degree, punitive in nature and therefore should not come into play unless the dog has previously injured someone "mischievously" or "without provocation." Because the jury at the first trial found that he was not negligent in keeping a mischievous dog,[2] Monroe

---

[2]The question on keeping a "mischievous" dog was submitted to the jury on the alternate theory of liability for single, rather than treble, damages pursuant to sec. 174.02, Stats. (1979–80).

argues that he should not be penalized by being ordered to pay treble damages. We reject this argument.

The dog owner's liability for treble damages arises from sec. 174.04, Stats. (1979–80); the statute requires only that the injured party prove the owner's knowledge that the dog had injured someone on a prior occasion.

> [N]o particular state of mind or outrageous character of the conduct is necessary at all. For the purpose of awarding treble damages under sec. 174.04, Stats., all that is necessary is that it be shown that the dog had previously injured someone under the statutorily defined circumstances and that the owner had notice of the previous injury. Whether the dog is known to be violent and vicious, so that the owner's conduct in not restraining the dog is extreme recklessness, or whether the dog is normally gentle, but has had one prior incident, makes no difference for the purpose of the statute. Treble damages are awarded in either case. *Cieslewicz v. Mutual Service Cas. Ins. Co.*, 84 Wis. 2d 91, 102, 267 N.W.2d 595, 600 (1978).

### (b) *The Amount to be Trebled*

As indicated, the jury found that both Carl Dostal and Monroe were causally negligent, apportioning sixty percent of the total negligence to Monroe and forty percent to Dostal. The trial court trebled the $20,000 unapportioned damage award, ruling that because Michael's claim was against Monroe alone, and Monroe's counterclaim for contribution from Carl Dostal was "entirely independent of the underlying transaction," Michael was entitled to the trebled $60,000 judgment against Monroe. The court then

granted contribution against Dostal for forty percent of $20,000, or $8,000.

*Sprague v. Sprague,* 132 Wis. 2d 68, 389 N.W.2d 823 (Ct. App. 1986), dealt with a similar situation arising under the 1981 double damage statute, sec. 174.02(1)(b), Stats. (1981–82), which is similar in its language to sec. 174.04, Stats. (1979–80). In *Sprague,* the mother of the injured child sued both the dog owner and the child's grandmother, who was supervising the child on the day he was bitten. The jury found both defendants equally (fifty percent) negligent and, in entering judgment, the trial court first doubled the gross award and then subtracted the amount attributable to the grandmother's negligence. *Id.* at 70–71, 389 N.W.2d at 823. Section 174.02(1)(b), Stats. (1981–82), like sec. 174.04, Stats. (1979–80), is silent as to whether damages are to be increased by the statutory multiplier before or after consideration of the allowance for the joint tortfeasor's negligence.

We recognized in *Sprague* that the purpose of the multiple damage provisions of ch. 174, Stats., is to punish the owner whose dog inflicts injury a second time and to deter others from keeping dogs known to have injured others in the past. As a result, we held that the doubling ought to occur "only after application of the laws of comparative negligence." *Id.* at 72, 389 N.W.2d at 824. We also noted that such a construction of the statute avoided the absurd result that would follow from the practice of first doubling the award and then subtracting the joint tortfeasor's share in cases where the owner was only minimally negligent and the other party was negligent to a much greater degree. We noted that in such a case the owner "could be liable for a disportionate amount of the damages, given [his or her] small degree of

negligence," and we concluded that such a result was both unreasonable and unintended by the legislature. *Id.* at 73, 389 N.W.2d at 824.

In this case, unlike *Sprague,* the injured party did not sue both tortfeasors. He proceeded only against the dog owner who in turn sought contribution from the supervising parent, and the jury was properly asked to apportion the negligence of both men. While the computation and assignment of damages between the tortfeasors is somewhat more involved,[3] in terms of the policy of the statute it makes no difference whether the non-owner's liability arises in a direct action by the plaintiff or, as here, in a counterclaim or cross-claim by the dog owner.

The procedure used by the trial court and adopted by the dissent in this case would treble the damages at the outset and then order contribution from Carl Dostal for forty percent of Michael's actual (untrebled) damages. If we were to follow that procedure, Monroe, whose actions contributed to only sixty percent of Michael's actual damages—$12,000 out of the $20,000

---

[3]We approach the problem in two steps, first assessing the amount owed by Monroe and then determining Carl Dostal's liability for contribution.

As to Monroe, Michael is entitled first his actual damages of $20,000. A trebling of this amount would result in $60,000—a "penalty" of $40,000 over and above actual damages. Because, however, the penalty attaches only to dog owners under the statute, it must be discounted by forty percent—the extent to which Carl Dostal's negligence contributed to those damages.

The plaintiffs are, therefore, entitled to judgment against Monroe and Millers in the sum of $44,000 ($20,000 actual damages plus the "penalty" of sixty percent of $40,000 or $24,000).

As for Carl Dostal's contribution, Monroe and Millers should have judgment on their counterclaim for $8,000, representing forty percent of Michael's actual damages of $20,000.

total—would be required to pay five times that amount and would receive only $8,000 in contribution from Carl Dostal. As a result, Monroe's net liability would be $52,000—four and one-third times his share of Michael's compensatory damages.

The special statutory liability for multiple damages is grounded solely upon ownership of a dog known to have bitten in the past. We would indeed be rewriting the statute, were we to extend, by judicial fiat, the dog owner's "punishment" beyond that portion of the plaintiff's injuries attributable to ownership of the dog. Monroe's share of the damages would not be just trebled, they would be nearly quintupled. We do not believe the legislature intended such a result.

We appreciate the fact, as pointed out by the trial court, that a claim for contribution such as that made by Monroe against Carl Dostal in this case is independent of Michael's underlying cause of action. *Geiger v. Calumet County,* 18 Wis. 2d 151, 155, 118 N.W.2d 197, 200 (1962). No matter how it is accomplished, however—whether by direct action or contribution—shifting the punishment from the dog owner to an ordinarily negligent non-owner, or extending the owner's special liability for punitive damages to injuries wholly unrelated to ownership of the dog, does not comport with either the past or present multiple damage provisions of ch. 174, Stats.

We recognize that the plaintiff recovers less under this procedure than under the procedure used by the trial court.[4] But the purpose of the treble

---

[4]If we were to treble the $20,000 and then apportion the negligence, Michael would recover $60,000 from Monroe who

damage provision is not to compensate the plaintiff. We must assume that end will be accomplished by the award of compensatory damages. The jury found that $20,000 would adequately compensate Michael for his injuries, and any amount received over and above that compensation is a windfall to him.

Enhanced damages under ch. 174, Stats., exist only to punish and deter. Those purposes are not reasonably served by requiring the dog owner to pay not just three but four or five times his apportioned liability for the plaintiff's damages, as the trial court and the dissent would do in this case.

We therefore reverse on this issue and remand to the trial court with directions to enter judgment on the complaint against the defendants in the sum of $44,000 and on the counterclaim in the sum of $8,000.

## II. ERROR IN ORDERING A PARTIAL NEW TRIAL

█

We will not disturb the trial court's decision to grant a new trial absent a clear showing of abuse of discretion. *Larry v. Commercial Union Ins. Co.,* 88 Wis. 2d 728, 733, 277 N.W.2d 821, 823 (1979). We will not find an abuse if the record shows that discretion was in fact exercised and the court's decision has a reasonable basis and a proper legal foundation. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982).

Monroe's primary criticism of the trial court's ruling that the first verdict was perverse is that it

would, in turn, be entitled to contribution from Carl Dostal in the amount of $24,000.

.

"relied heavily, if not exclusively, on the size of the jury's award," contrary to established rules of law. It is true that as a general rule inadequacy of damages does not by itself establish perversity. *Luedtke v. Shedivy,* 51 Wis. 2d 110, 123, 186 N.W.2d 220, 227 (1971). In some situations, however, the inadequacy "may have significance in determining whether a new trial should be ordered . . . ." *Mainz v. Lund,* 18 Wis. 2d 633, 645, 119 N.W.2d 334, 341 (1963).

Basically, "[a] perverse verdict is one which is clearly contrary to the evidence." *Nelson v. Fisher Well Drilling Co.,* 64 Wis. 2d 201, 210, 218 N.W.2d 489, 493 (1974). To render a verdict perverse, it is not necessary that the jury be found to have acted dishonestly or from improper motive, "but it must . . . appear that considerations which were ulterior to a reasonably fair application of the judgment of the jury to the evidence [and] instructions . . . have controlled the jury." *Id.* at 210–11, 218 N.W.2d at 493. In other words, a verdict is perverse "when it reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair." *Badger Bearing v. Drives & Bearings,* 111 Wis. 2d 659, 667, 331 N.W.2d 847, 852 (Ct. App. 1983).

In this case the court, in granting the new trial, discussed the nature and extent of Michael's injuries, the painful treatment he had undergone, and his permanent facial scarring. The court also stated its opinion that the first jury was prejudiced against Michael's parents (and co-plaintiffs) by the defense's repeated references to them as being more concerned about the recovery of damages than with Michael's injuries, and by Monroe's emphasis in testimony and

argument on an incident in which Carl Dostal was said to have shot and killed a family watchdog because the animal had become "too friendly." In addition, the court noted that during its deliberations the jury sent out a question asking who would actually receive any damages awarded to Michael and whether the money would be placed in a trust fund. The court concluded that, as a result of such "prejudicial" testimony and argument, "the jury was antagonistic to ... both parents and were [sic] concerned that they would receive the money ... [and] that this was taken into consideration in establishing the damage amounts." As additional support for its determination of perversity, the court referred to the defendants' "repeated emphasis" on the fact that Michael may have approached the dog while it was chewing on a bone and that this was a "reason for the attack." The court called this a "non-issue in the case [which was] likely to have influenced the jury to minimize its award ...."

We conclude that the trial court exercised its discretion under proper legal standards in ruling that the damage portions of the verdict were perverse.

We are also satisfied that the court's conclusion that this perversity did not infiltrate the jury's findings on negligence constituted a proper exercise of discretion. In so concluding, the court noted that the jury's findings as to the negligence of both Carl Dostal and Monroe were "fully supported" by credible evidence, and we agree. There was testimony that, despite specific warnings to keep his son away from the dog, Carl permitted Michael to wander off unattended in the dog's presence while he and Monroe turned their attention to the tractor. The evidence of Monroe's knowledge that his dog previously had

injured someone—the basis for his liability under the statute—was essentially undisputed, as was the fact that, knowing this, he nonetheless permitted the dog to run loose while Michael was present.

On these facts, the trial court's conclusion that the negligence portions of the verdict were not perverse has a rational basis, and we see no abuse of discretion in limiting the new trial to issues of damage only.

### III. FUTURE MEDICAL EXPENSES

No claim for future medical expenses was advanced at the first trial, and the new trial was limited to damages for Michael's personal injuries. Specifically, the court set aside the jury's answers to the two questions dealing with Michael's past and future "pain, suffering and disfigurement" and ordered a new trial as to such damages.

It is unclear from the record precisely how the question of future medical expenses came to be litigated at the second trial. The issue was tried, however, and the court included a special verdict question on the subject, which the jury answered with the sum of $5,150. On motions after verdict, the court struck the answer, reasoning that the claim was precluded because it was never made at the first trial and was not included in the new trial order.

Michael's cross-appeal challenges the propriety of the court's order. Monroe, while agreeing with the trial court's action, contends that the pain and suffering portions of the verdict were so polluted by the evidence on Michael's need for further treatment that a new trial (or, in the alternative, reinstatement of the first trial verdict) is warranted.

### (a) *Striking the Award*

Michael argues that the trial court abused its discretion in striking the future medical expense damage award because those expenses are inseparable from his damages for future pain and suffering, citing *Kenwood Equipment, Inc. v. Aetna Ins. Co.,* 48 Wis. 2d 472, 485–86, 180 N.W.2d 750, 758 (1970), and *Badger Bearing,* 111 Wis. 2d at 674–75, 331 N.W.2d at 855–56.

The cases and the argument miss the point, however. Both *Kenwood* and *Badger Bearing* dealt with the authority of a trial court to order a new trial as to one or more of several issues tried. The cases state that a "partial" new trial may be granted on an issue that is "entirely separable" from the others. *Kenwood,* 48 Wis. 2d at 485–86, 180 N.W.2d at 758; *Badger Bearing,* 111 Wis. 2d at 673, 331 N.W.2d at 855. In the present case, the issue of future medical expenses was never presented at the first trial. Thus, the question of whether future pain and suffering is "entirely separable" never arose. The cases are thus inapplicable and do not compel inclusion of the unraised issue in the second trial.

Regardless of the relationship between future pain and suffering and future medical expense, the fact is that the latter issue was neither raised nor tried in the first trial. While we are unable to discern how it came to be tried in the second trial, the court's postverdict decision to strike the answer was well within its discretionary powers to construe and implement its prior orders in the case. We see no error.

### (b) *Prejudice*

Monroe argues that the evidence that Michael required future medical and surgical treatment "obvi-

ously" affected that jury's award for past and future pain and suffering. He does not elaborate on the argument or point to any evidence of prejudice other than the fact that the second jury awarded more ($20,000) than the first ($15,300)[5] for those elements of Michael's damages.

Defense counsel themselves argued to the second jury that $15,000 would be a fair award for Michael's pain and suffering. The $20,000 verdict, either by itself or in its relationship to the amount of the first verdict, provides no basis for any claim that the jury was prejudiced by the testimony as to Michael's future medical expenses.

## IV. CLOSING ARGUMENT

Although the arguments of counsel were not reported, it is conceded that at one point in his rebuttal Michael's counsel argued "substantially to the effect that no reasonable person would take $10,000 or $15,000 for these injuries to themselves [sic] or to their children or grandchildren." The statement was made in response to arguments by defense counsel that Michael's personal injuries were worth no more than $10,000 or $15,000.

Monroe's counsel objected to the statement as an improper "golden rule" argument. The trial court, apparently choosing not to interrupt, did not respond to the objection. Michael's attorney did not continue

---

[5]In the first trial the jury, in separate questions, valued Michael's past pain, suffering and disfigurement at $6,800 and his future pain, suffering and disfigurement at $8,500, or a total of $15,300. The second jury awarded Michael $20,000 for "past and future pain, suffering, disfigurement and disability."

the argument but moved immediately to another point. After the jury retired, the court and counsel made a brief and inconclusive record in which the court paraphrased the challenged statement and defense counsel restated his objection. The court noted that, although the argument "was probably improper," it had effectively overruled the objection by electing not to interfere. Monroe's attorney did not move for a mistrial or otherwise pursue the matter at the time. The trial court later denied Michael's postverdict motion for a new trial, concluding that the verdict "did not reflect any bias in favor of the injured plaintiff," and thus any impropriety in the argument was not prejudicial.

■ While alleged errors occurring during closing argument may be preserved by timely objection and postverdict motion, this does not necessarily provide a basis for reversal. *Leibl v. St. Mary's Hospital of Milwaukee,* 57 Wis. 2d 227, 231, 203 N.W.2d 715, 717 (1973). In such situations, the failure to move for a mistrial is generally considered an election to take one's chances on a favorable verdict and a waiver of any right to assert prejudice at a later time. *Kink v. Combs,* 28 Wis. 2d 65, 72, 135 N.W.2d 789, 793–94 (1965). "[C]ounsel cannot simply interpose an objection, then remain silent and be heard to complain only after an adverse verdict has been returned." *Liebl,* 57 Wis. 2d at 231, 203 N.W.2d at 717.

Monroe argues that we should, nonetheless, exercise our discretion and consider the error on our own motion. *Nimmer v. Purtell,* 69 Wis. 2d 21, 40, 230 N.W.2d 258, 268 (1975). We decline to do so for two reasons.

First, we are not satisfied that the argument was improper. A "golden rule" argument asks the individual jurors to put themselves in the shoes of the plaintiff—or, in this case, the plaintiff's parents—and decide what they themselves would want to recover for the particular injury. *Rodriguez v. Slattery,* 54 Wis. 2d 165, 170, 194 N.W.2d 817, 819 (1972). It is a "do unto others" argument that shifts the jurors' attention from the parties and the evidence before them to matters relating to their own feelings, emotions and biases. It asks the jurors to internalize and personalize the case, rather than to search for the truth from the evidence, and it is universally recognized as improper argument. Here, however, Michael's counsel was not asking the jurors to put themselves in Carl Dostal's shoes and decide the case as they would if Michael was their son. The gravamen of the challenged statement is only that no reasonable plaintiff would consider the amounts previously suggested by defense counsel as adequate compensation.

Second, even if the remark could be considered improper, we, like the trial court, see no evidence of prejudice. Although the trial lasted only one day, the remark was but a single sentence offered in rebuttal to the arguments of defense counsel as to what they felt would be adequate compensation. In addition, as the trial court noted, there was no suggestion that the amount of the verdict was prejudiced by the statement. Indeed, defense counsel themselves suggested $15,000 as a fair recovery. Michael's attorney suggested $60,000, and the jury awarded $20,000. We find no grounds for reversal in Michael's closing argument.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

SUNDBY, J. *(concurring in part; dissenting in part)*. Section 174.04, Stats. (1979–80), requires that Monroe, as the owner of a biting dog, pay Michael treble damages. Carl Dostal is liable to Monroe for forty percent of Michael's actual damages, but is not liable for any portion of the enhanced damages. I concur that there need be no proof of the owner's knowledge of prior "mischievous" conduct by the dog, that the trial court did not abuse its discretion in limiting the new trial to the issue of damages only, and that Michael's closing argument presents no grounds for reversal. However, the trial court erred in striking the jury's award of Michael's future medical expenses.

## AMOUNT TO BE TREBLED

Sec. 174.04, Stats. (1979–80), provides:

> Any person suffering personal injury by any dog in the manner set forth in s. 174.01 may give notice to the owner or keeper of the act done, and if after such notice such dog shall injure any person, or wound or kill any horses, cattle, sheep or lambs, or do any other mischief or injury the owner or keeper shall be liable to pay to the person injured thereby treble damages.

The dog owner's liability under this section does not depend upon fault, but solely upon ownership of a dog which has previously injured someone under the statutorily defined circumstances. In *Cieslewicz v. Mutual Service Cas. Ins. Co.,* 84 Wis. 2d 91, 102, 267 N.W.2d 595, 600 (1978), the supreme court said:

> For the purpose of awarding treble damages under sec. 174.04, Stats., all that is necessary is that it be shown that the dog had previously injured some-

one under the statutorily defined circumstances and that the owner had notice of the previous injury. Whether the dog is known to be violent and vicious, so that the owner's conduct in not restraining the dog is extreme recklessness, or whether the dog is normally gentle, but has had one prior incident, makes no difference for the purpose of the statute. Treble damages are awarded in either case.

It is undisputed that Monroe owned the dog, that he knew the dog had previously bitten someone, and the dog bit Michael. The requirements of the statute are satisfied. Section 174.04, Stats. (1979–80), assesses statutory multiple damages. *Id.* at 101, 267 N.W.2d at 600. Common law punitive damages are assessed in the discretion of the jury, while statutory multiple damages are automatically assessed. "Rich and poor pay the same amount, as the statute provides simply for an automatic multiplier of the compensatory damages. In this case, on an arbitrary and statutory basis, the damages are trebled." *Id.* at 102, 267 N.W.2d at 601.

Application of the laws of comparative negligence are antithetical to the purposes of a statute which imposes statutory multiple damages for its violation. Multiple damages imposed pursuant to statute such as sec. 174.04, Stats. (1979–80), are punitive in nature. *Cieslewicz,* 84 Wis. 2d at 103, 267 N.W.2d at 601.

> The purposes of punitive damages are to punish the wrongdoer and to deter others from like conduct. *Kink v. Combs,* 28 Wis. 2d 65, 81, 135 N.W.2d 789 (1965). Punitive damages are also intended to have the effect of punishing types of conduct which are oppressive and hurtful to the individual but which frequently go unpunished by

the public prosecutor. *Kink v. Combs, supra,* 28 Wis. 2d at 80.

*Id.* at 100, 267 N.W.2d at 599. The purposes of deterrence and punishment would be compromised if the doctrine of comparative negligence was applied.[1]

In *Sprague v. Sprague,* 132 Wis. 2d 68, 389 N.W.2d 823 (Ct. App. 1986), we held that the laws of comparative negligence operated before the doubling of damages under sec. 174.02(1)(b), Stats. (1981–82), which replaced sec. 174.04 (1979–80).[2] In reaching that conclusion we stated: "The dog owner's liability should have some relation to his or her responsibility." *Sprague,* 132 Wis. 2d at 73, 389 N.W.2d at 824. That would be true if the basis for liability under the statute is negligence. The language of sec. 174.02(1)(b) (1981–82) may permit that construction.[3] However, the language of sec. 174.04 (1979–80) is unambiguous. That statute provides that if a person is injured and the statute applies the owner or keeper "shall be liable" for treble damages.

We adopted the interpretation we did in *Sprague* so as to avoid what appeared to be the absurd result of a dog owner being substantially liable for damages when the owner was only minimally negligent. *Id.,* 132 Wis. 2d at 72, 389 N.W.2d at 824. That interpretation is logical only if the foundation of the liability is

---

[1]In *Dawson v. Jost,* 35 Wis. 2d 644, 151 N.W.2d 717 (1967), where a fifty percent negligent plaintiff was denied recovery, the court was not asked to consider whether sec. 174.04, Stats., was founded on negligence or strict liability.

[2]Among other changes, ch. 285, Laws of 1981, reduced the statutory enhancement of damages from treble to double.

[3]1985 Wis. Act 92 makes the contributory negligence statute, sec. 895.045, Stats., applicable to actions under sec. 174.02(1)(a) and (b), Stats.

negligence and not public policy. I believe the legislative policy expressed in sec. 174.04, Stats. (1979–80) is that a dog owner whose dog has demonstrated a vicious propensity keeps that dog at his peril. The majority expresses dismay with the result I believe the statute requires and, to ameliorate that result, converts the basis of liability thereunder from strict liability to negligence. But yet, the majority explains: "The special statutory liability for multiple damages is grounded *solely* upon ownership of a dog known to have bitten in the past." (Emphasis added.) Majority opinion at page 8. I agree. If the result of predicating liability upon ownership of a biting dog and not negligence in restraining the dog is unacceptable, the legislature is the proper forum to change the result, not this court.

## CONTRIBUTION

I believe the trial court correctly concluded that the defendants are entitled to contribution from Carl Dostal only with respect to Michael's compensatory damages. This is consistent with the strict liability imposed by the statute.

## STRIKING AWARD OF FUTURE MEDICAL EXPENSES

In its new-trial order, the trial court ordered:

3. That the motion of the plaintiffs that the verdict as to damages as to injuries to the plaintiff Michael C. Dostal be set aside is granted, the answers to questions 8(a) and (b) of the special verdict are set aside and a new trial ordered *as to such damages.* (Emphasis added.)

264

The jury verdict questions 8(a) and (b) related only to past and future pain, suffering, and disfigurement. No evidence was introduced at the first trial as to future medical expenses. That issue was tried in the second trial and a question as to such expenses was included in the special verdict. However, on motion, the trial court struck the jury's award.

The new-trial order could be interpreted one of two ways: that "such damages" referred to the damages for injuries to Michael, or that such reference was to the special verdict questions as to damages. The trial court adopted the latter interpretation. Obviously the trial court is the best judge of what it intended in its new-trial order.

While I agree that the trial court had the right to interpret its new-trial order as it did, I agree with Michael that the defendants waived their right to object to a special jury verdict question on the issue of future medical expenses when they failed to object to that testimony at the time of trial. As Michael points out, the case was tried on the theory that Michael's future medical expenses were properly an element of his damages. Michael disclosed that the surgeon would be an expert witness. A report of the surgeon's conclusions was provided to all counsel. His deposition was taken. No objection was made to receipt of his testimony at the time of trial. Objection was raised at the time of the verdict conference and in posttrial motions. The failure to object to the evidence at the time of trial constituted a waiver. *Ollinger v. Grall,* 80 Wis. 2d 213, 223, 258 N.W.2d 693, 699 (1977).

The defendants argue that they were prejudiced by the admission of this evidence because it revealed to the jury that Michael would need cosmetic surgery and necessarily resulted in a higher jury award for

pain and suffering. Michael points out, on the other hand, he was prejudiced because with the scar revisional surgery his award for future disfigurement and future pain and suffering after the surgery would be less. Michael argues that striking the jury award unfairly punishes him for mitigating his damages by seeking future medical treatment.

To allow evidence as to future medical expenses to be presented to the jury and to influence its determination of future pain and suffering *and disfigurement,* and then to strike the jury award constituted an abuse of discretion. I believe this portion of the judgment should be reversed.