Marilyn MARTZ, Plaintiff-Appellant,†

v.

Katherine R. TRECKER and Transamerica Insurance Group, Defendants-Respondents.

Court of Appeals

No. 94–0733. *Submitted on briefs February 3, 1995.—Decided April 19, 1995.*

(Also reported in 535 N.W.2d 57.)

†Petition to review denied.

589

590

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kathryn Sawyer Gutenkunst* and *Suzanne Fischer Lorenz* of *Cramer, Multhauf & Hammes* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Christine M. Benson* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Marilyn Martz appeals from the trial court's judgment in a personal injury case awarding her $19,500. On appeal, Martz asserts that: (1) the surveillance tape taken of her should not have been admitted at trial; (2) the jury's award for her past wage loss, pain, suffering and disability and past medical expenses was not supported by the evidence; (3) the driver of the car she was injured in, Richard Young, should not have been included in the special verdict; and (4) the jury's verdict should have been overturned and a new trial ordered in the interest of justice. Because we conclude that the trial court did not erroneously exercise its discretion regarding three of the issues and because the operator of the vehicle in which Martz was a passenger was properly included in the special verdict, we affirm.

In May 1989, Martz suffered injuries when a vehicle driven by Young, in which Martz was a passenger, was struck by Katherine Trecker. Trecker's insurer was Transamerica Insurance Group (collectively, Trecker). Martz suffered fractured ribs and stated that she had pain in her neck and back. From the time of the accident until the trial, Martz was treated by numerous doctors. At trial, Martz testified that her physical abilities were limited—she did not place items on her left shoulder and she tended to use her right arm and hand exclusively.[1]

---

[1] Martz testified as follows:

Q: And so you try to stay away from something that would be resting on your shoulder?

A: Yes. Many times I even go without my bra because it irritates my lower rib area here and my shoulder.

Q: So you shy away from having things resting on your shoulder?

At trial, Trecker introduced a surveillance tape taken of Martz. The tape showed Martz engaging in physical actions which conflicted to some degree with her trial testimony concerning her physical limitations. Over Martz's objections, the trial court admitted the videotape into evidence and allowed Michael Spaude, the insurance investigator who had made the surveillance tape, to testify. Trecker had not put Spaude on her witness list.

A jury found that Trecker and Young were both negligent in the operation of their vehicles. The jury attributed sixty percent of the negligence to Trecker and forty percent to Young and awarded Martz $19,500 in damages. Martz made a motion for additur to increase "the jury's award of damages for past wage loss and for pain, suffering, and disability . . .." In the alternative, Martz requested a new trial, claiming that the admission of the surveillance tape and inclusion of Young on the special verdict were error.

The trial court denied Martz's request for additur and a new trial. On December 27, 1993, the court

A: Yes.

Q: For example, if you carried your purse you'd carry it on your right as opposed to your left?

A: I usually set it right in here and carry it. I don't put it on my shoulders, either one.

Q: And that has been since the date of the accident?

A: Yes.

Q: Now, you've indicated to doctors, I believe, in medical records that you are trying to use, or you tended to use your right arm and hand exclusively?

A: (Witness nodding.)

Q: Is that a yes?

A: Yes, I'm sorry.

entered a judgment of $19,500 in favor of Martz. Martz appeals.

Martz raises three issues that are within the trial court's discretion. Whether to admit evidence at trial is a decision that rests within the sound discretion of the trial court and will not be upset absent an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App.), *cert. denied*, 113 S. Ct. 608 (1992). Similarly, the decision whether to grant additur, *see Daanen v. MacDonald*, 254 Wis. 440, 446, 37 N.W.2d 39, 42 (1949), or to overturn a jury's verdict and grant a new trial is within the trial court's discretion and will not be disturbed absent an erroneous exercise of discretion. *See Dostal v. Millers Nat. Ins. Co.*, 137 Wis. 2d 242, 253, 404 N.W.2d 90, 94 (Ct. App. 1987).

Martz argues that the surveillance tape taken of her by Spaude should not have been admitted at trial. She cites numerous cases from other jurisdictions holding that a party is entitled to know whether he or she has been videotaped and to have access to the tape prior to trial. Martz contends that the court's decision in *Ranft v. Lyons*, 163 Wis. 2d 282, 286, 471 N.W.2d 254, 255 (Ct. App. 1991), where the court concluded that post-accident surveillance is protected work product and is not discoverable prior to trial, was based on the particular facts of that case and does not apply here. Martz argues that unlike in *Ranft*, where discovery was attempted prior to trial, she "was completely surprised that videotape surveillance had been taken in her case. The surveillance was taken 12 days before trial, after discovery had closed."

■

We conclude that the trial court did not err in admitting the surveillance tape into evidence. In *Ranft*, the plaintiffs inquired in an interrogatory as to whether there had been any surveillance taken. The defendants refused to answer on the ground that the information sought constituted protected work product. *Id.* at 296-97, 471 N.W.2d at 259. In contrast, while Martz claims that the surveillance tape was discoverable, she never made a discovery demand for surveillance material. Therefore, there was never any need for Trecker to respond to a discovery demand or to seasonably update a demand. *See* § 804.01(5), Stats.

■

Martz was allowed to seasonably challenge the surveillance material prior to Trecker's use of the material at trial. *See Ranft*, 163 Wis. 2d at 302, 471 N.W.3d at 262. She was allowed to view a copy of the tape overnight; the trial court allowed extended argument by counsel; and the court permitted an offer of proof of Spaude's testimony, at which time Martz was able to cross-examine him. The trial court did not misuse its discretion when it permitted Trecker to use the surveillance tape during the trial.

Next, Martz argues that "the jury's award of damages for past wage loss, past medical expenses and pain, suffering and disability were not supported by the evidence and were inadequate and perverse."

■

A jury verdict will be sustained if there is any credible evidence to support it. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). This is especially true when the verdict has the trial court's approval. *Id.*

We conclude that the trial court did not erroneously exercise its discretion in ruling that the jury's award was supported by the evidence and denying Martz's request for additur. According to Dr. Hoffman's testimony, it did not surprise him that another doctor had determined that Martz had reached a healing plateau by February of 1990. Additionally, Dr. Stiehl's testimony indicated that Martz was capable of doing work by mid-1990. Relying on this testimony, it was not contrary to the evidence for the jury to believe that Martz was capable of work in 1990 and award her $9000 in wage loss. We do not agree with Martz that the jury was actuated by passion and prejudice in reaching its decision.

As to pain and suffering, we agree with Trecker that the jury could have reasonably concluded from the impeachment evidence that Martz's pain and suffering were not as severe as her testimony indicated. Additionally, we note that Martz's appeal of the amount awarded for past medical expenses was waived by her failure to properly raise the issue before the trial court. *See Evjen v. Evjen,* 171 Wis. 2d 677, 688, 492 N.W.2d 361, 365 (Ct. App. 1992).

Next, Martz argues that it was error to include Young in the special verdict. She states: "[B]ecause Martz was a passenger in a vehicle driven by Mr. Young, the appropriation of negligence between Katherine R. Trecker and Richard Young had no effect on Martz's claim in this case. Rather, the inclusion of Young on the Special Verdict confused the jury because Mr. Young was not represented by counsel and was not a party to the case."

596

■

Whether the special verdict should have inquired as to the alleged negligence of Young, the nonparty operator of the vehicle in which Martz was a passenger, is a question of law which we review de novo. *See Zintek v. Perchik,* 163 Wis. 2d 439, 454, 471 N.W.2d 522, 527-28 (Ct. App. 1991).

■

We reject Martz's argument. It is well established that "when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release." *Connar v. West Shore Equip.,* 68 Wis. 2d 42, 44-45, 227 N.W.2d 660, 662 (1975).

In *Hauboldt v. Union Carbide Corp.,* 160 Wis. 2d 662, 681, 467 N.W.2d 508, 515 (1991), the court distinguished Connar, stating that "[t]he reason that the jury should be given an opportunity to consider the negligence of all persons involved is that adding in the causal negligence of the omitted tort-feasor(s) may affect the amount of recovery by the injured party." The court in Hauboldt held that the trial court did not err in failing to include in the special verdict questions relating to the land occupier's causal negligence in constructing, maintaining and storing items. *Id.* at 681-83, 467 N.W.2d at 515-16. The court reasoned that unlike in Connar where "the plaintiff's recovery was set off by the deceased's own contributory negligence, and any change in apportionment would also increase or decrease the amount of the plaintiff's set-off[,] [h]ere, the plaintiff was not contributorily negligent;

and any changes in the apportionment would not affect his amount of recovery." *Id.* at 682, 467 N.W.2d at 516.

■

In the present case, although Martz's amount of recovery was not affected by including Young in the special verdict, Young was properly included because it gave the jury the opportunity to consider the negligence of all parties for comparison purposes. We conclude that the trial court did not err by including Young in the special verdict.

Based on our discussion above, we conclude that the trial court did not err in its decision to uphold the jury's verdict and in refusing to order a new trial.

*By the Court.*—Judgment affirmed.

BROWN, J. (*concurring*). I acknowledge that we are bound by the holding of *Ranft v. Lyons*, 163 Wis. 2d 282, 286, 471 N.W.2d 254, 255 (Ct. App. 1991). For that reason, I concur in the opinion of this court. I write separately, however, to register my disagreement with *Ranft*.

As the court in *Ranft* conceded, the majority rule in the United States is that a party is entitled not only to know before trial whether he or she has been subjected to photographic or video surveillance, but to have pretrial access to the surveillance materials as well. *Id.* at 300, 471 N.W.2d at 261. The *Ranft* court listed only two reasons for this majority rule: (1) modern litigation favors access to all relevant material over gamesmanship and (2) there exists the possibility that the surveillance materials might be misleading or deceptive. *Id.* The *Ranft* court then rejected these two reasons, without any evaluation, as sufficient rationales requiring disclosure. *Id.*

Rather, the *Ranft* court declared that surveillance tapes are "workproduct" because they are part of how a lawyer goes about evaluating the strengths and weaknesses of a case. *Id.* at 301, 471 N.W.2d at 261. The *Ranft* court concluded that the tapes therefore do not have to be produced prior to trial unless it can be shown that the failure to disclose would "unnecessarily frustrate" the "objectives of pretrial discovery" or, alternatively, that there is "good cause" requiring disclosure. *Id.* The *Ranft* panel determined that "[i]f defendants wish to use any surveillance materials at trial, the trial court should give the Ranfts ample opportunity to challenge the materials outside the jury's presence prior to any decision on their admissibility." *Id.* at 303, 471 N.W.2d at 262.

In my view, the *Ranft* panel neglected to mention a third reason why the majority of courts require disclosure of surveillance tapes. The third reason is that disclosure permits accurate assessment of the strengths and weaknesses of a case, thus fostering settlement and freeing the courts and parties of a costly trial. *See, e.g., Olszewski v. Howell,* 253 A.2d 77, 78 (Del. Super. Ct. 1969).

From a law and economics perspective, this reason militates in favor of the majority rule. The greater the stakes, the more that parties will spend on litigation. The increasing probability of a favorable outcome justifies the expense. Laws should be designed to increase the productivity of the parties' litigation expenditures. If the expected value of the outcome declines, then settlement is a greater possibility. So, if the plaintiff knows that he or she has been a subject of videotape surveillance and further suspects that the surveillance will hamper his or her credibility, there is less chance of the case going to trial.

Judge Richard Posner has theorized that a full exchange of information in the possession of the parties is likely to facilitate settlement by enabling each party to form a more accurate, and generally more convergent, estimate of the likely outcome of the case. Compulsion is necessary since, in normal bargaining, each party has the incentive to withhold information—knowing that if negotiations fail, the information will be more valuable at trial if the opponent has not had the opportunity to prepare a rebuttal to it. RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 437 (2d ed. 1977).

Although the *Ranft* court did not address the cost-effectiveness aspect of disclosure, I have an idea about how that court might respond. In a footnote to the opinion, the court posits that revelation of surveillance materials prior to trial renders the material subject to "post-hoc explanations" which "can always, at least partially, defuse damaging . . . testimony." *Ranft,* 163 Wis. 2d at 303 n.8, 471 N.W.2d at 262.

The result, it would seem to be argued, is that settlement would not be fostered since the plaintiff could take strategic maneuvers to lessen the impact of the surveillance tape by the time of trial. I would disagree. It is difficult—if not impossible—to soften the impact of a damaging videotape.

Perhaps the *Ranft* court did not mean this to be, but the decision seems to choose an unannounced policy goal over the policy goal of cost-effective litigation. This unannounced policy goal is that showing jurors a video catching personal injury plaintiffs in a probable lie is a good thing—it serves the truth-finding function of litigation. The policy goal of showing the jury that the plaintiff has been caught lying is deemed more

important than disclosing the video at pretrial and cost effectively settling the case or gaining dismissal of it.[1]

I do not favor the policy of going to trial simply to allow jurors to see a videotape. The exhilaration that a defense attorney might gain from seeing the look on an opposing lawyer's face when the tape is played does not, in my opinion, justify the cost involved in trying the case. I would hope that, someday, our supreme court might have the opportunity to visit the issue discussed in *Ranft* and reach a different result.

---

[1] This policy goal is probably a part of two correlative assumptions. One is that the fear of being exposed in front of a jury will cause lying plaintiffs to be more risk averse toward filing frivolous suits than toward exposure during the pretrial process. The other is that threat of exposure in front of a jury will deter a plaintiff's lawyer from pursuing meritless claims. I reject both. The assumptions presuppose that laypersons know about the *Ranft* decision and will therefore choose to sue or not to sue after listening to the " 'inner voice which warns us that someone may be looking.' " *Ranft v. Lyons,* 163 Wis. 2d 282, 302-03, 471 N.W.2d 254, 262 (Ct. App. 1991) (quoting H.L. MENCKEN, A MENCKEN CHRESTOMATHY 617 (1956)). This is a false assumption. As well, lawyers have no immediate reason to believe that their clients are lying to them when the clients tell the lawyer about the things they could do before the accident that they cannot do now. Finally, to the extent that a possible plaintiff might be more risk averse to suing because of knowledge that a videotape might be shown to the jury, the empirical data supporting the cost effectiveness of settlement far outweighs a theory with no empirical support.