David OLLHOFF and Kathy Ollhoff, Plaintiffs-Appellants,†

v.

Jim PECK d/b/a/ Jim Peck's Wildwood, Peck's Wildwood, Inc., and Essex Insurance Company, Defendants-Respondents,

EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Defendant.

Court of Appeals

*No. 92–2900. Submitted on briefs May 17, 1993.—Decided June 15, 1993.*

(Also reported in 503 N.W.2d 323.)

†Petition to review denied.

720

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Randy L. Frokjer* of *Ament, Wulf & Frokjer* of Merrill.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Matthew E. Yde* of *Ruder, Ware & Michler, S.C.* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   David and Kathy Ollhoff appeal a judgment and orders denying them summary judgment, refusing to allow evidence of remedial measures and refusing to set aside the jury verdict. They argue that (1) strict liability should have applied against the defendants because they housed "wild" animals, (2) the trial court erred by refusing to allow the Ollhoffs to present evidence of remedial measures and (3) the trial court should have set aside the verdict as perverse. We reject these arguments and affirm.

David Ollhoff and his family visited Jim Peck's Wildwood, Inc., a nature park that includes a petting zoo and a musky pond. During this trip, Ollhoff was bitten while reaching into the musky pond to pet a musky. Ollhoff sued Wildwood under negligence, safe place and strict liability theories. Before trial, the court denied summary judgment to both sides and dismissed Ollhoff's strict liability claim with prejudice. The case proceeded to trial, during which the court granted Wildwood's motion in limine excluding evidence that Wildwood placed warning signs near the musky pond after the accident. The jury returned a verdict finding Wildwood 10% causally negligent and Ollhoff 90% causally negligent. Ollhoff's postverdict motions were heard and denied and he appealed.

## STRICT LIABILITY

When we review a decision to grant or deny summary judgment, we apply the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Thus, summary judgment should be granted if there are no disputed

issues of material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), Stats.

Ollhoff argues that Wildwood should be held to a standard of strict liability, and thus Ollhoff is entitled to judgment as a matter of law. He cites treatises and foreign state case law that indicates the possessors of wild animals are strictly liable for physical harm caused by the animals. W. PAGE, KEETON, ET AL., PROSSER AND KEATON ON THE LAW OF TORTS, § 77, at 542 (5th ed. 1984); *Briley v. Mitchell*, 115 So.2d 851 (La. 1959), *on remand*, 119 So.2d 668 (La. App. 1960). The Wisconsin legislature has not adopted a strict liability rule for all "wild animals." Rather, it has established strict liability causes of action only for particular types of animals. *See* sec. 172.01, Stats. (stallions, bulls, boars, rams and billy goats allowed to run at large); sec. 174.02, Stats. (dogs). It has not established strict liability for damages caused by other animals, such as a musky.

█

Wildwood argues that the liability of the owner or keeper of an animal is controlled by Wis Jury Instruction—Civil 1391, which states:

> An owner (keeper) of a(n) (insert name of animal) is deemed to be aware of the natural traits and habits which are usual to a(n) (animal), and must use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.
>
> In addition, if an owner (keeper) is aware or in the exercise of ordinary care should be aware that the animal possesses any unusual traits or habits that would be likely to result in injury or damage, then the owner (keeper) must use ordinary care to

restrain the animal as necessary to prevent the injury or damage.

Wildwood asserts that this instruction appropriately establishes a duty of care that expands or contracts depending on the specific traits of the particular animal involved and the general characteristics of the class to which the animal belongs. We agree. Although we are not bound by the jury instructions, we view them as persuasive. *State v. O'Neil*, 141 Wis. 2d 535, 541 n.1, 416 N.W.2d 77, 80 n.1 (Ct. App. 1987). In the absence of statutorily created strict liability, the liability of owners or keepers of all animals should be governed by the law as stated in Wis Jury Instruction—Civil 1391. The instruction correctly does not distinguish between domesticated and wild animals, but rather instructs the jury to hold owners of animals to the appropriate standard of care given the nature of the animal involved.

■

Whether Wildwood violated that standard of care was a jury issue. Therefore, the trial court correctly denied Ollhoff's motion for summary judgment.

## SUBSEQUENT REMEDIAL ACT

■

At the time of the accident, there were no warning signs at the musky pond. After the accident, Wildwood placed warning signs at the pond. The trial court granted Wildwood's motion in limine and prohibited Ollhoff from mentioning at trial the subsequent placement of the signs. Our review of an evidentiary ruling is limited to determining whether the trial court properly exercised its discretion. *Chomicki v. Wittekind*, 128 Wis. 2d 188, 195, 381 N.W.2d 561, 564 (Ct. App. 1985). We will affirm the trial court if it (1) examined

the relevant facts, (2) applied a proper standard of law and (3) using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982).

Ollhoff argues that this subsequent remedial act could have been admitted under sec. 904.07, Stats. This section states:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. *This section does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as . . . impeachment or proving a violation of s. 101.11 [the safeplace statute].* (Emphasis added).

Ollhoff correctly asserts that the trial could have allowed this evidence under sec. 904.07 because this case sought to prove a safe place violation and because Ollhoff could have used it to impeach testimony offered by a Wildwood witness. However, the trial court did not exclude the evidence under sec. 904.07, but rather under sec. 904.03. During trial, the court reiterated its ruling:

> I had been advised by counsel that the day after the event which is the subject of this lawsuit Jim Peck's put up some rather conspicuous signs. I had already ruled that although I could allow that information into evidence in a safe-place case as an exception to the prohibition against subsequent remedial measures, I chose not to, because I thought that it wasn't necessary to put the current existence of

725

signs into evidence to prove that signing was feasible . . . .

I thought the fact that the signs were there was not probative enough . . . and that, therefore, the prejudicial effect would outweigh any probative value. That ruling was under 904.03 and not under the subsequent remedial measures statute [sec. 904.07].

Under sec. 904.03, the trial court is given broad discretion to exclude evidence where its probative value is substantially outweighed by the danger of unfair prejudice and other factors. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (we defer to the discretion of the trial court on evidentiary issues). The trial court's explanation shows that it examined the relevant facts, applied the proper standards and, using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. We conclude therefore that this was a reasonable exercise of discretion.

## PERVERSE VERDICT

Last, Ollhoff argues that the verdict should be set aside as perverse. *Bergmann v. Insurance Co. of North America*, 49 Wis. 2d 85, 87–88, 181 N.W.2d 348, 350 (1970), provides the applicable standard to a challenged jury finding:

[I]f there is any credible evidence which under any reasonable view fairly admits of inferences which support the jury's verdict, the verdict must be sustained, and neither the trial court nor [an appellate] court may tamper with it. The evidence must be considered in the light most favorable to the jury verdict. . . . The evidence supporting the verdict must be accepted by the court unless it appears that

726

the evidence is patently incredible. (Citations omitted.)

The basis of Ollhoff's contention that the verdict was perverse was that (a) the 10%/90% split went against the credible evidence supplied to the jury, and (b) a jury finding of no future medical expenses for David Ollhoff and no damages to Kathy Ollhoff was not in any way supported by the evidence. We are not persuaded because there is credible evidence to support the jury's apportionment of negligence.

David Ollhoff is an adult who reached into a musky pond to pet a musky. He testified that he attempted to pet the musky near the tail area to avoid being bitten. The jury could infer that he was aware of the danger of "petting" a musky. There is credible evidence to support a finding that David Ollhoff was 90% causally negligent. Thus, it is apparent that Wildwood is not liable. Where it is apparent that there is no liability in any event, the failure of the jury to find damages does not render the verdict perverse. *Jahnke v. Smith*, 56 Wis. 2d 642, 652, 203 N.W.2d 67, 72 (1973). Therefore, the jury's failure to find any future medical expenses for David or any loss of consortium for his wife does not make the verdict's answer on negligence perverse.

*By the Court.*—Judgment and orders affirmed.