PER CURIAM.
¶1 Colin Turner was injured while jumping onto an inflatable airbag during Country Fest, a music festival organized by Chippewa Valley Music Festival ("Chippewa Valley"). Turner sued Chippewa Valley, along with Bounce Back LLC, d/b/a US Airbag, LLC, ("US Airbag")-the entity that designed, owned, and operated the airbag-and Great Air, Inc., d/b/a N-Flatables, Inc., ("N-Flatables")-the entity that sewed the airbag. Following a two-week trial, a jury found that US Airbag was negligent, but its negligence was not causal; that N-Flatables was not a manufacturer of the airbag; that Chippewa Valley was not negligent; and that Turner was 100% causally negligent. The jury declined to award Turner any damages.
¶2 Turner and Freedom Life Insurance Company of America ("Freedom")-a subrogated insurer-now appeal, arguing: (1) the jury's verdict was perverse; (2) the circuit court erroneously exercised its discretion in instructing the jury; (3) the court erroneously exercised its discretion by denying Turner and Freedom's motion for default judgment or a mistrial as a sanction for a discovery violation by US Airbag and N-Flatables; (4) the court erred in its responses to other improper conduct by US Airbag's counsel; and (5) Turner and Freedom are entitled to a new trial in the interest of justice. We reject each of these arguments and affirm.
BACKGROUND
¶3 As noted above, Turner was injured at Country Fest while jumping onto an inflatable airbag that was designed, owned, and operated by US Airbag. The airbag measured fifty feet long by fifty feet wide and had been sewn together by N-Flatables, according to US Airbag's specifications. At Country Fest, participants jumped onto the airbag, which was inflated to a height of ten feet above the ground, from a platform located twenty-seven feet above the ground.
¶4 Turner was fifty-eight years old at the time of his injury. When he jumped off the platform onto the airbag, his blood alcohol concentration was 0.11-nearly 40% above the legal limit in Wisconsin for operation of a motor vehicle.[1] Turner testified that when he jumped from the platform, he intended to do a flip in midair. He "took a running start," "jumped out," "tucked [himself] together," and "rolled forward." Turner conceded that he had never before done a flip, that he had no control over his body while performing the maneuver, and that he did not know whether he would successfully complete the flip. A video of Turner's jump, which was taken by his then-fiancée Debra Ackerman, was played for the jury. Rather than doing a single flip, Turner completed one and one-half forward rotations before landing on the airbag headfirst. He suffered multiple spinal fractures and ultimately underwent a surgical fusion of the C1 to C4 vertebrae.
¶5 Turner subsequently filed the instant lawsuit against US Airbag, N-Flatables, and Chippewa Valley. He asserted negligence and products liability claims against all three defendants,[2] and a safe place claim against US Airbag and Chippewa Valley. Following a two-week trial, a jury found that US Airbag was negligent, but its negligence was not causal. The jury further found that N-Flatables was not a manufacturer of the airbag. As a result, the jury did not determine whether N-Flatables was negligent. The jury also found that Chippewa Valley was not negligent in failing to maintain the premises in a safe condition. Finally, the jury found that Turner was negligent, and that his negligence was causal. When asked what sums of money would reasonably compensate Turner for the damages he had sustained as a result of his injuries, the jury entered "$0" for each of six categories of damages.
¶6 Turner and Freedom filed motions after verdict. They argued a new trial was warranted because the jury's verdict was perverse and was not supported by the great weight of the credible evidence. In addition, they requested either a new trial or a directed verdict, based on US Airbag's and N-Flatables' violations of the circuit court's orders. Freedom also argued that the jury instructions regarding Turner's contributory negligence were improper and repetitive. The circuit court denied Turner's and Freedom's postverdict motions and entered judgment in favor of US Airbag, N-Flatables, and Chippewa Valley. Turner and Freedom now appeal. Additional facts are included below.
DISCUSSION
I. Perverse verdict
¶7 On appeal, Turner and Freedom first argue that the circuit court should have granted them a new trial because the jury's verdict was perverse. A verdict is perverse when the jury clearly refuses to follow the circuit court's instructions on a point of law. Nelson v. Fisher Well Drilling Co. , 64 Wis. 2d 201, 210, 218 N.W.2d 489 (1974). A verdict is also perverse when it "reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair." Id. Ultimately, a perverse verdict "is one which is clearly contrary to the evidence." Id.
¶8 A circuit court is in a better position than this court to determine whether a verdict is perverse. Badger Bearing, Inc. v. Drives & Bearings, Inc. , 111 Wis. 2d 659, 667, 331 N.W.2d 847 (Ct. App. 1983). Accordingly, we will uphold a circuit court's decision that a verdict is not perverse unless the court erroneously exercised its discretion. Id. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a rational process to reach a reasonable conclusion. See Loy v. Bunderson , 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).
¶9 Here, Turner and Freedom argue the verdict is perverse because three of the jury's findings are clearly contrary to the evidence: (1) the finding that US Airbag was not causally negligent; (2) the finding that N-Flatables was not a manufacturer of the airbag; and (3) the award of $0 in damages for Turner's injuries. When reviewing a party's claim that a verdict is perverse because it is contrary to the evidence, we will uphold the verdict as long as it is supported by any credible evidence. S.C. Johnson & Son, Inc. v. Morris , 2010 WI App 6, ¶37, 322 Wis. 2d 766, 779 N.W.2d 19 (2009). We view the evidence in the light most favorable to the verdict, and we must accept the evidence supporting the verdict unless it is patently incredible. Ollhoff v. Peck , 177 Wis. 2d 719, 726-27, 503 N.W.2d 323 (Ct. App. 1993).
A. Finding of no causal negligence by US Airbag
¶10 Turner and Freedom first argue that the jury's verdict is perverse due to its finding that US Airbag was not causally negligent. As an initial matter, Freedom argues the jury's findings that US Airbag was negligent, but its negligence was not causal, are "inconsistent and cannot be reconciled." Freedom contends US Airbag's negligence "related to [the] design, testing, warning, and conduct of the event itself on the day of the injury," and, as a result, the negligence found by the jury necessarily "had to be causal."
¶11 Freedom's argument in this regard is meritless. To prevail on a negligence claim, a plaintiff must establish four elements: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." Morden v. Continental AG , 2000 WI 51, ¶45, 235 Wis. 2d 325, 611 N.W.2d 659. Freedom essentially argues that, where a jury has found negligence-i.e., the existence of a duty and a breach of that duty-it must also necessarily find causation. However, this argument is contrary to law, as it would relieve plaintiffs of their obligation to establish one of the elements of a negligence claim. Moreover, Freedom cites no legal authority supporting its position that, having found US Airbag negligent, the jury was required to further find that its negligence was causal. We therefore reject Freedom's argument that the verdict is perverse because the jury's findings regarding negligence and causation are irreconcilably inconsistent.[3]
¶12 Both Turner and Freedom also argue the evidence does not support the jury's finding that US Airbag's negligence was not causal. However, in so doing, they merely cite evidence that might have permitted a reasonable jury to conclude US Airbag's negligence caused Turner's injuries. Their arguments therefore ignore our standard of review, which requires us to view the evidence in the light most favorable to the jury's verdict, see Ollhoff , 177 Wis. 2d at 726, and uphold the verdict as long as it is supported by any credible evidence, see S.C. Johnson & Son, Inc. , 322 Wis. 2d 766, ¶37.
¶13 Applying this standard, we conclude there was sufficient evidence for the jury to find that US Airbag was negligent, but its negligence was not causal. One of Turner's experts-biomechanical engineer Wilson Hayes-testified the airbag that Turner jumped onto was defective and unreasonably dangerous because it did not absorb force sufficiently for the height of the jump and because it "pocket[ed]" the first part of the body to come into contact with the airbag. Turner's other expert-Edward Pribonic, a mechanical engineer who specialized in amusement rides and devices-testified US Airbag was negligent in failing to provide adequate instructions to users, including instructional signs. This testimony provided a sufficient basis for the jury's finding that US Airbag was negligent with respect to its design and operation of the airbag.
¶14 Other evidence, however, would have permitted a reasonable jury to find that US Airbag's negligence was not causal. Evidence was introduced at trial that Turner-at age fifty-eight-decided to jump onto the airbag at a time when his blood alcohol concentration was 0.11. On cross-examination, Turner conceded that to reach that level of intoxication, he would have had to consume between nine and ten twelve-ounce beers or one-shot drinks in the four and one-half hours preceding his jump. In addition, Turner admitted that he was attempting to do a flip in midair, even though he had never done a flip before and did not know whether he could successfully complete that maneuver.
¶15 Furthermore, Tommy Winter-the US Airbag employee who was on the platform at the time Turner jumped-expressly testified that he warned Turner to "land on your butt and back like you're [in a] sofa chair." Turner's medical records from the day of the accident corroborate Winter's testimony, in that they state Turner "was supposed to land on his back; however, he landed on his neck and twisted his neck."[4] Although Hayes-one of Turner's expert witnesses-testified the airbag was defective and unreasonably dangerous, he also conceded: "The people providing instructions say you should land on your back and butt. That may, in the end, if you accomplish that, may be defined as a safe jump and clearly many people can do that."
¶16 Based on this evidence, the jury could have reasonably found that, although US Airbag was negligent in its design and operation of the airbag, Turner's own negligence was the sole cause of his injuries because: (1) Turner should not have chosen to jump, given his age and level of intoxication; (2) Turner disregarded Winter's warning about the proper way to jump and land; and (3) Turner chose to attempt a flip despite having never done so before and having no idea whether he could successfully complete that maneuver. Credible evidence therefore supports the jury's findings that US Airbag was negligent, but its negligence was not causal. As such, the circuit court did not erroneously exercise its discretion by rejecting Turner and Freedom's claim that the jury's finding of no causal negligence by US Airbag rendered its verdict perverse.
B. Finding that N-Flatables was not a manufacturer of the airbag
¶17 Turner next argues that the verdict is perverse because the jury's finding that N-Flatables was not a manufacturer of the airbag is clearly contrary to the evidence. In support of this argument, Turner asserts that during their depositions, two N-Flatables representatives described the company as having manufactured airbags for US Airbag. Turner also observes that, during his trial testimony, US Airbag's former owner, Rufus Casey, conceded that N-Flatables "made" the airbag involved in Turner's accident.
¶18 Again, Turner's argument in this regard ignores our standard of review. Although the evidence Turner cites could have permitted a reasonable jury to find that N-Flatables was a manufacturer of the airbag, other evidence at trial supported a contrary finding. Specifically, Casey testified that US Airbag designed the airbag, had a series of prototype airbags constructed by companies other than N-Flatables, and tested those prototypes in various ways. Casey further testified that US Airbag did not ask N-Flatables how to make an airbag, and that he knew N-Flatables had never made an airbag before. Casey maintained that US Airbag contracted with N-Flatables for the limited purpose of sewing five airbags based on US Airbag's design and according to US Airbag's specifications, and he described N-Flatables as a "contract sewer." He also conceded that US Airbag did not expect N-Flatables to provide any warnings or instructions regarding the airbag, and US Airbag was responsible for "[e]verything to do with [that]."
¶19 In addition, Robert Field-N-Flatables' president-testified that US Airbag did not hire N-Flatables to design the airbag, that US Airbag had provided the design and specifications, and that N-Flatables was not asked to perform any testing or inspection of the completed airbag. Field further testified that N-Flatables was never advised as to the specific use of the airbags it sewed and was never asked to make any determination regarding their use. Field explained, "[T]his is an existing product where the pattern, the design, and the material choices [were] all supplied to us. We just sewed the product together."
¶20 Based on this evidence, the jury could reasonably find that N-Flatables merely sewed the airbag involved in Turner's accident based on US Airbag's specifications; that it did not exercise any discretion in its sewing of the airbag; that it had no control over the design of the airbag; and that it had no responsibility for testing the airbag or providing instructions or warnings regarding its use. On these facts, the jury could reasonably determine that N-Flatables was not a manufacturer of the airbag. Stated differently, the jury's finding that N-Flatables was not a manufacturer is not clearly contrary to the evidence. Accordingly, the circuit court did not erroneously exercise its discretion by rejecting Turner's argument that the jury's finding in that regard rendered its verdict perverse.
C. Award of $0 in damages
¶21 Turner and Freedom also argue that the jury's verdict is perverse because its decision to award $0 in damages is clearly contrary to the evidence. They note it is undisputed that Turner suffered significant injuries-namely, multiple spinal fractures-when he jumped onto the airbag. They further observe it was undisputed at trial that Turner had incurred at least $375,000 in medical expenses as a result of his injuries. They therefore contend that the jury's decision to award $0 in damages constituted a "complete disregard of the evidence." They also cite cases holding that an inadequate damages award is evidence of perversity on the part of the jury and provides a basis to set aside the verdict and grant a new trial. See, e.g. , Murphy v. Lachmund Lumber & Coal Co. , 194 Wis. 119, 121, 215 N.W. 822 (1927).
¶22 Be that as it may, Wisconsin courts have also held that an award of $0 in damages is not grounds for ordering a new trial when the jury has answered other verdict questions so as to determine that there is no liability on the part of the defendant. For instance, in Sell v. Milwaukee Automobile Insurance Co. , 17 Wis. 2d 510, 519-20, 117 N.W.2d 719 (1962), our supreme court stated:
The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse.
Elsewhere, the court has similarly stated that a jury's failure to award damages does not ordinarily render its verdict perverse "where it is apparent that there is no liability in any event." Jahnke v. Smith , 56 Wis. 2d 642, 652, 203 N.W.2d 67 (1973).
¶23 In this case, as discussed above, credible evidence supports the jury's findings that US Airbag was not causally negligent and that N-Flatables was not a manufacturer of the airbag. In addition, Turner and Freedom do not challenge the jury's finding that Chippewa Valley was not negligent in failing to maintain safe premises. Given that the jury found no liability on the part of any defendant-and that its findings in that regard are supported by credible evidence-the jury's failure to award Turner damages does not render its verdict perverse. See Sell , 17 Wis. 2d at 519-20.
¶24 In arguing to the contrary, Freedom relies on Fouse v. Persons , 80 Wis. 2d 390, 259 N.W.2d 92 (1977). However, Fouse is inapposite. In that case, our supreme court affirmed the circuit court's conclusion that the jury's verdict was perverse because the evidence did not support three aspects of the jury's damages award. See id. at 396-99. Unlike this case, Fouse did not involve a situation in which the jury reasonably found no liability on the part of any defendant. Fouse therefore does not compel a conclusion that the verdict in this case was perverse due to the jury's failure to award Turner damages.
II. Jury instructions
¶25 A circuit court has broad discretion in instructing the jury, and we will affirm as long as the court's chosen instructions accurately state the law and comport with the facts of record. Lang v. Lowe , 2012 WI App 94, ¶31, 344 Wis. 2d 49, 820 N.W.2d 494. Here, Turner and Freedom argue they are entitled to a new trial because the circuit court erred in multiple ways when instructing the jury. We reject each of these arguments, for the reasons explained below.
A. Definition of the term "manufacturer"
¶26 The special verdict in this case contained three questions regarding N-Flatables: (1) was N-Flatables a manufacturer of the airbag used at Country Fest; (2) if so, was N-Flatables negligent; and (3) if so, was N-Flatables' negligence a cause of Turner's injuries. The jury found that N-Flatables was not a manufacturer of the airbag, and, as a result, it did not answer the verdict questions regarding negligence and causation.
¶27 Because the special verdict asked the jury to determine whether N-Flatables was a manufacturer of the airbag, Turner argues the circuit court should have provided a jury instruction defining the term "manufacturer."[5] We agree with N-Flatables that Turner forfeited this argument by failing to raise it in the circuit court. The record shows that Turner did not ask the court to include any jury instruction defining the term "manufacturer," nor did Turner object to the court's failure to provide an instruction defining that term. Objections to the jury instructions must be raised before the jury returns its verdict, and a party forfeits any objection to the instructions by failing to raise it before that time. See Gustavson v. Milwaukee & Suburban Transp. Corp. , 52 Wis. 2d 510, 511, 191 N.W.2d 39 (1971). Moreover, Turner also forfeited his argument regarding the court's failure to provide a definition of "manufacturer" by failing to raise that argument in his postverdict motions. See Suchomel v. University of Wis. Hosp. & Clinics , 2005 WI App 234, ¶¶10-11, 288 Wis. 2d 188, 708 N.W.2d 13. As such, we need not address Turner's argument.
B. Instructions regarding Turner's contributory negligence
¶28 Next, both Turner and Freedom argue that the circuit court erred when instructing the jury regarding Turner's contributory negligence. Turner observes that the court gave three separate instructions on contributory negligence: WIS JI-CIVIL 1007 ("Contributory Negligence: Defined"); WIS JI-CIVIL 3254 ("Duty of Buyer or Consumer: Contributory Negligence"); and a special instruction based on WIS. STAT. § 895.525(4), pertaining to the responsibilities of participants in recreational activities. Citing several cases from other jurisdictions, Turner argues repetitious jury instructions are improper if their effect is to give undue emphasis to a particular theory. See, e.g. , Hennefer v. Blaine Cty. Sch. Dist. , 346 P.3d 259, 271 (Idaho 2015). He contends the repetitious instructions in this case regarding his contributory negligence unduly emphasized the defense theory that he was at least partially responsible for his own injuries.
¶29 Notably, Turner cites no Wisconsin authority supporting his claim that a circuit court erroneously exercises its discretion by providing repetitious jury instructions. Moreover, we do not agree with Turner that the instructions in this case were unduly repetitious. Each of the three instructions on contributory negligence served a distinct purpose. The first instruction provided a general description of Turner's obligations as they related to contributory negligence. The second instruction informed the jury of Turner's specific responsibilities as a product consumer. The third instruction informed the jury of Turner's distinct obligations as a participant in a recreational activity. We agree with Chippewa Valley that "[t]he fact that there were multiple contributory[-]negligence-type instructions only reflects the somewhat complicated nature of this case." In addition, Turner does not allege that any of the three instructions on contributory negligence misstated the law. Under these circumstances, we reject Turner's argument that the court erroneously exercised its discretion by providing three separate instructions pertaining to contributory negligence.
¶30 Turner and Freedom also argue that the evidence did not support the circuit court's decision to give a special instruction based on WIS. STAT. § 895.525(4), pertaining to the responsibilities of participants in recreational activities. Consistent with the statute, that instruction informed the jury that a participant in a recreational activity is responsible to "[m]aintain control of his or her person and the equipment, devices or animals the person is using while participating in the recreational activity" and must "[r]efrain from acting in any manner that may cause or contribute to the death or injury to himself or herself or to other persons while participating in the recreational activity." See § 895.525(4)(a)3.-4. The instruction also informed the jury that a failure to fulfill these duties "constitutes negligence." See § 895.525(4)(b).
¶31 Turner and Freedom argue the evidence at trial did not support giving this instruction because Hayes testified that an untrained person does not have the capability to control his or her body during the one-second period between jumping off the platform and landing on the airbag. They contend Hayes' testimony shows that an untrained individual who jumped onto the airbag could not possibly fulfill the duties required by WIS. STAT. § 895.525(4)(a)3. and 4. -i.e., maintaining control of his or her body and refraining from conduct that could cause injury or death.
¶32 The record belies Turner and Freedom's argument. While Hayes testified that it would be very difficult for an untrained individual to maintain control over his or her body after jumping off the platform, he also conceded: "The people providing instructions say you should land on your back and butt. That may, in the end, if you accomplish that, may be defined as a safe jump and clearly many people can do that ." (Emphasis added.) Hayes' testimony therefore did not render the circuit court's instruction based on WIS. STAT. § 895.525(4) factually inapplicable. In addition, Turner and Freedom's argument fails to account for an individual's ability to control his or her conduct before leaving the platform-e.g., choosing to do a running jump and flip in the air, which Turner undisputedly did. Moreover, this court has previously acknowledged the appropriateness of instructing a jury as to the plaintiff's duties under § 895.525(4). See Ansani v. Cascade Mountain, Inc. , 223 Wis. 2d 39, 46-49, 588 N.W.2d 321 (Ct. App. 1998). As such, we conclude the court did not erroneously exercise its discretion in this case by giving the jury an instruction based on that statute.
C. Answer to the jury's question regarding damages
¶33 Finally, Freedom argues the circuit court erred when answering a question from the jury regarding damages. During its deliberations, the jury informed the court that it found the verdict question on damages "confusing" and asked: "If there is no negligence, do we still assign dollar amounts?" After consulting with the parties, the court responded: "[Y]ou must fill in the damages if you decide to award any damages regardless of the liability questions previously answered. Your answer can be from zero to whatever amount you deem appropriate." Freedom argues the court erred by instructing the jury to answer the damages question only "if" it decided to award damages. Freedom also argues the court erred by telling the jury it could award any amount of damages, including $0, because the evidence did not support a $0 damages award.
¶34 Freedom forfeited these arguments by failing to raise them in the circuit court. As noted above, the court consulted with the parties after receiving the jury's question. After informing the parties of the answer it intended to provide, the court inquired, "Everybody good with that?" No party objected to the court's proposed answer. Freedom therefore forfeited its present claim that the court erred in answering the jury's question. See Gustavson , 52 Wis. 2d at 511. While Freedom asserts no objection was required because the court's answer constituted plain error, it does not present a developed argument explaining why the plain error doctrine is applicable here. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments). We therefore decline to address Freedom's forfeited argument that the circuit court erred in answering the jury's question regarding damages.
III. Discovery violation
¶35 Turner and Freedom next argue that the circuit court erred by denying their joint motion for either a default judgment or a mistrial as a sanction for a discovery violation committed by US Airbag and N-Flatables. "The decision to impose sanctions and the decision of which sanctions to impose, including dismissing an action with prejudice, are within a circuit court's discretion." Industrial Roofing Servs., Inc. v. Marquardt , 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898, opinion clarified on denial of reconsideration , 2007 WI 62, 301 Wis. 2d 30, 731 N.W.2d 634. Before ordering dismissal as a sanction for a discovery violation, a court must find that the noncompliant party acted egregiously or in bad faith. See id. , ¶43. Egregious conduct "consists of a conscious attempt to affect the outcome of litigation or a flagrant knowing disregard of the judicial process." Garfoot v. Fireman's Fund Ins. Co. , 228 Wis. 2d 707, 724, 599 N.W.2d 411 (Ct. App. 1999).
¶36 The factual background regarding Turner and Freedom's discovery violation argument is as follows. During his deposition on May 6, 2015, Casey testified that US Airbag had hired N-Flatables to sew a total of five airbags and had ordered additional airbags from at least one other company. He also testified that US Airbag had sold the airbag involved in this case after Turner's accident.
¶37 Thereafter, Turner's counsel asked attorney Michael Hutchens, who at the time represented both US Airbag and N-Flatables, about obtaining an airbag for Turner's experts to test. Hutchens responded by email, "We have located a bag in Seattle." In a subsequent email, Turner's counsel inquired: "[I]s the bag that has been located in Seattle, the actual bag that Turner was using? If not, are there any differences in this bag and Turner's? Where is Turner's bag? If it is a different bag, how are they different?" Hutchens responded, "There are no identifying marks like a serial number. So it's unclear if it is the exact one. But they are all alike." Turner's experts-Hayes and Pribonic-subsequently tested the Seattle airbag, under the assumption that it was identical to the airbag involved in Turner's accident.
¶38 By the time of trial, N-Flatables was represented by attorney Peter Waldeck, while US Airbag continued to be represented by attorney Hutchens. On the third day of trial, during his cross-examination of Hayes, Waldeck inquired whether Hayes would be surprised to learn that the airbag he tested "wasn't sewn together by N-Flatables but by some other company." Hayes responded he would not be surprised to learn that fact. Waldeck then asked, "If you're not testing the bag that was used or even a bag that was sewed by [N-Flatables], aren't the tests you performed therefore invalid?" Hayes responded in the negative and explained, "I don't believe, in fact, it was the sewing of the bag that was the problem. It was the design and failure to test of the bag."
¶39 The following day, attorney Waldeck asked Pribonic if he knew whether the airbag he had inspected "was sewed by N-Flatables." Pribonic responded, "My recollection is that Mr. Casey said this was the identical airbag and one of the five produced by N-Flatables." Pribonic subsequently confirmed, in response to Waldeck's questions, that because he had not inspected a bag sewn by N-Flatables, he was not able to offer any opinion that N-Flatables "somehow sewed the bag improperly."
¶40 Following Pribonic's testimony, Turner and Freedom moved for either a default judgment or a mistrial as a sanction for US Airbag's and N-Flatables' failure to disclose, prior to trial, that the airbag provided to Hayes and Pribonic was not sewn by N-Flatables. In response, attorney Waldeck maintained that he and attorney Hutchens had first learned that the tested bag was not sewn by N-Flatables on the second day of trial. In addition, Hutchens faulted Turner's counsel for failing to specifically ask whether N-Flatables had sewn the tested airbag.
¶41 After considering briefs and supporting materials filed by the parties, the circuit court declined to grant Turner and Freedom either a default judgment or a mistrial as a sanction for US Airbag's and N-Flatables' discovery violation. The court found that there was no egregious conduct by US Airbag or N-Flatables, as no one had "intentionally misrepresent[ed]" that N-Flatables sewed the airbag provided to Turner's experts. The court further observed that the identity of the company that sewed the airbag was not relevant to the experts' opinions, as they faulted the airbag's "design," not its "stitching." The court determined a curative instruction would sufficiently address US Airbag's and N-Flatables' violation. Accordingly, when the jury re-entered the courtroom, the court stated:
We had some discussion last week regarding the experts and the airbags and opinions. I'm here to instruct you that any airbag testing by the plaintiff's experts, Dr. Hayes and Mr. Pribonic, is applicable to the airbag involved in the Colin Turner incident. You should treat such testing as if it occurred on the actual airbag involved in the Colin Turner accident. The evidence of testing in the expert testimony is for you, the jury, to give it what weight and consideration you deem appropriate.
¶42 The circuit court's decision to provide a curative instruction-rather than granting Turner and Freedom either a default judgment or mistrial-was not an erroneous exercise of discretion. Although attorney Hutchens was perhaps not entirely forthcoming in his email to Turner's counsel, he did not actually make any representation that the airbag provided for testing had been sewn by N-Flatables. Thus, the circuit court's findings that US Airbag and N-Flatables did not make any intentional misrepresentations and did not engage in egregious conduct are not clearly erroneous. Moreover, the court correctly noted that the identity of the company that sewed the airbag made no difference to Turner's experts and did not affect their opinions.
¶43 Turner and Freedom make much of the fact that attorneys Hutchens and Waldeck failed to reveal that the tested airbag was not sewn by N-Flatables "until a time it benefited them-during cross[-]examination, in front of the jury, in an attempt to impugn the opposing party's opinions." While we do not condone Hutchens' or Waldeck's conduct in that regard, the circuit court expressly instructed the jury that it should treat the experts' tests as though they were performed on the airbag involved in Turner's accident. The court's instruction therefore put Turner and Freedom in the same position they would have occupied had the experts tested an exemplar sewn by N-Flatables. Accordingly, by providing a curative instruction, the court remedied any harm caused by Hutchens' and Waldeck's conduct, while at the same time avoiding the harsh sanction of a default judgment and the delay and expense associated with a mistrial. On this record, we cannot conclude the court erroneously exercised its discretion by denying Turner and Freedom's request for a default judgment or a mistrial and instead addressing the discovery violation by means of a curative instruction.
IV. Improper conduct by US Airbag's attorney
¶44 Freedom also argues a new trial is warranted based on other improper conduct by attorney Hutchens. Freedom first observes that, prior to trial, the circuit court granted a motion in limine precluding "any evidence, testimony, or comment that infers the airbag had a good safety record based on the amount of people who used this bag compared to the reported number of injuries." Despite this ruling, Hutchens asserted during his closing argument that "thousands and thousands and thousands and thousands of people" had jumped onto the airbag involved in Turner's accident and "no one has ever been hurt when they land as instructed on the butt and the back."
¶45 Freedom argues attorney Hutchens' reference to the airbag's safety record violated the circuit court's pretrial order and was prejudicial to Turner and Freedom, thus providing a basis to grant them a new trial. However, Freedom did not request a mistrial on this basis before the jury returned its verdict. As such, Freedom has forfeited any argument that a new trial is warranted due to Hutchens' improper reference to the airbag's safety record. See Zweifel v. Milwaukee Auto. Mut. Ins. Co. , 28 Wis. 2d 249, 256, 137 N.W.2d 6 (1965). Although Freedom asserts in a single sentence in its reply brief that Hutchens' reference to the airbag's safety record constituted plain error, its argument in that regard is undeveloped, and we therefore need not address it. See Pettit , 171 Wis. 2d at 646-47.
¶46 Freedom also contends attorney Hutchens violated a court order that precluded the admission of certain recorded conversations between Turner and Debra Ackerman regarding the extent of Turner's injuries. Freedom argues Hutchens violated that order when questioning Ackerman by referencing two words she had used in those conversations-"charade" and "exaggerating." Freedom asserts a new trial is necessary due to these "knowing violations" of the court's order.
¶47 We disagree. Regardless of whether attorney Hutchens' use of the words "charade" and "exaggerating" violated the circuit court's order-a point that US Airbag and Chippewa Valley dispute-the record shows that the court sustained Freedom's objections to Hutchens' questions and instructed the jury to disregard them. We presume that the jury followed the court's instructions. See State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). As such, Freedom has failed to establish any prejudice resulting from Hutchens' use of the words "charade" and "exaggerating." Again, while we do not condone the violation of a court order, Hutchens' questions-even if improper-do not provide a basis to grant Turner and Freedom a new trial.
V. New trial in the interest of justice
¶48 Finally, Turner and Freedom argue that they are entitled to a new trial in the interest of justice, based on the combined effect of the errors discussed above. See WIS. STAT. § 752.35. However, we have already concluded that the jury's verdict is not perverse, in that its findings are not clearly contrary to the evidence. Moreover, while we do not condone defense counsel's actions, the circuit court acted within its discretion in responding to those actions and did not err by refusing to grant either a default judgment or a mistrial. In addition, neither Turner nor Freedom develops an argument that any of the issues they forfeited were so prejudicial as to warrant a new trial, despite their failure to timely object. On the whole, the circuit court appropriately exercised its discretion in all respects, and none of Turner's and Freedom's claimed errors-whether considered individually or cumulatively-merit granting a new trial in the interest of justice.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

For individuals with two or fewer prior convictions, suspensions, or revocations, as counted under Wis. Stat. § 343.307(1) (2015-16), the legal limit for operation of a motor vehicle is 0.08. Wis. Stat. § 340.01(46m)(a) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

"Wisconsin case law allows plaintiffs to seek recovery from a manufacturer for the defective design of a product under a strict liability theory and/or a negligence theory." Morden v. Continental AG , 2000 WI 51, ¶42, 235 Wis. 2d 325, 611 N.W.2d 659. Although Turner's amended complaint alleged that US Airbag, Chippewa Valley, and N-Flatables were "strictly liable" because the airbag "was defective and unreasonably dangerous" and because the defendants "failed to provide adequate and reasonable notice of the hazards," on the ninth day of trial Turner voluntarily withdrew his strict liability products liability claim and proceeded solely on a negligence theory.

In addition, we observe that Freedom's proposed special verdict form contained separate questions asking whether US Airbag was negligent and, if so, whether that negligence was a cause of Turner's damages. Consistent with Freedom's proposed special verdict, the special verdict form that was ultimately submitted to the jury also contained separate questions regarding US Airbag's negligence and whether that negligence was causal. Freedom's approval of a special verdict form with separate questions regarding negligence and causation is inconsistent with its argument on appeal that, having found US Airbag negligent, the jury was required to find that its negligence was causal. If that were the case, it would have been unnecessary to include a separate question regarding causation on the special verdict form.

Turner cites his own testimony that he was not instructed to land on his buttocks or back. However, the jury was not required to accept Turner's testimony in that regard, particularly in light of Winter's contrary testimony, which was corroborated by Turner's medical records from the day of the accident. See Morden , 235 Wis. 2d 325, ¶39 (noting it is the role of the jury, not the appellate court, "to balance the credibility of witnesses and the weight given to the testimony of those witnesses"). In addition, there was ample evidence at trial from which the jury could have reasonably determined that Turner was not a credible witness. This included evidence contradicting Turner's claim that he had only drunk one or two beers, a swig of wine, and two one-shot whiskey sours during the five and one-half hours preceding his accident. It also included testimony and video footage indicating that Turner had overstated the extent of his physical limitations after his injury.

Turner also contends, in conclusory fashion, that the circuit court should not have included a question on the special verdict asking whether N-Flatables was a manufacturer of the airbag. Citing Lagerstrom v. Myrtle Werth Hospital-Mayo Health System , 2005 WI 124, 285 Wis. 2d 1, 700 N.W.2d 201, Turner contends the court should have determined N-Flatables was a manufacturer of the airbag as a matter of law. However, the authority cited does not support Turner's argument. Here, there was no admission, uncontradicted proof, or failure of proof such that the court could have decided whether N-Flatables was a manufacturer of the airbag as a matter of law. As discussed above, there was credible evidence at trial to support the jury's finding that N-Flatables was not a manufacturer of the airbag. We therefore reject Turner's conclusory argument that the court erred by asking the jury to determine whether N-Flatables was a manufacturer.